## CHICAGO TELEPHONE SUPPLY CO. V. STACKPOLE CARBON CO.

### No. 3170.

District Court, W. D. Pennsylvania.
March 30, 1939.

Stebbins, Blenko & Parmelee and L. Clyde Strickland, all of Pittsburgh, Pa., and Wilkinson, Huxley, Byron & Knight, George L. Wilkinson, and Howard W. Hodgkins, all of Chicago, Ill., for plaintiff.

Brown, Critchlow & Flick, Jo Baily Brown, and Victor A. Peckham, all of Pittsburgh, Pa., for defendant.

### Discussion.

GIBSON, District Judge.

The plaintiff charges the defendant with infringement of its Schellenger Patents Numbers 1,920,217 and 1,996,175, each for a Rheostat. No. 1,996,175 is a division of the other patent, and the structure of each of the patented devices is identical with that of the other.

### Patent No. 1,920,217.

This patent discloses a compact form of rheostat suitable for use as volume controls in radio sets. In the rheostat is a flat contact shoe, carried by a projection at the end of a rotatable arm, which makes sliding, contact with a resistance element for varying electric current passing through the rheostat. Throughout the hearing the patent has been described as the "contact patent". It consisted of a combination of elements, each of which is admitted to have been well known prior to the application for the patent.

Upon the charge of infringement practically no difficulty was experienced by the court. Defendant's rheostats were substantially of the same form as those of plaintiff.

The situation was quite different when the contentions in respect to validity were considered. After much labor and considerable doubt—all traces of which have not been entirely eradicated—we have concluded that the evidence of the defendant has not been sufficient to overcome the presumption that the patent is valid. Despite the river of words which characterizes it, and which is almost sufficient to submerge entirely the novice in the art, the patent actually claimed is very narrow in scope. It applies to a rheostat wherein a flat contact shoe, of large contact area and low contact resistance, is carried by a projection at the end of a rotating arm and makes wiping contact with a carbonaceous resistance element for varying the electric current passing through the rheostat. A principal improvement claimed by the patent is a universal joint connection between the flat contact shoe and its carrying arm, by which the shoe may be pressed against the flat resistance element and at the same time be able to adjust itself to any irregularities or imperfections in the surface upon which it moves. All of these features of the patent were found to exist as elements of other patents by the examiner in the Patent Office, who rejected several claims, but allowed the claims in suit when the patentee limited them to disclose a rheostat having a sliding contact element which has an opening into which a tapered lug extends so that the sidewall of the opening may be engaged by the lug.

Even so amended and limited, the claims are so nearly paralleled by prior patents that it is certain no broad construction of the patent is possible. Notable among the patents which disclose contactors quite similar in the principle of operation to that of the instant patent are

Jones Patent No. 1,836,600 and Shubert Patent No. 1,340,121 (not cited in the Patent Office). While these patents have satisfied us that the scope of Patent No. 1,920,217 is limited, they have not convinced the court that it is invalid. This being so, and the defendant's rheostats following its narrowest construction, judgment must be in favor of the plaintiff.

Defendant introduced certain testimony which, it claimed, proved the construction of a contactor quite similar in its action to that of plaintiff more than two years before application for the instant patent was filed. Defendant's witness, Lodge, supported by other witnesses, has testified that he made and used a contact device which was substantially the same as the patented device while employed at the At-water-Kent plant in 1928 and 1929. He has produced a model, which unquestionably reproduces the idea of the patent, that was made by him for use in this suit, which embodies his recollection of the device used by him in testing carbon covered resistance elements. Plaintiff has also produced models made by Lodge during his employment at the H. Eby Company in 1931, which disclose substantially the same idea. These models, however, were dated later than the date of the manufacture and sale of the patented device by plaintiff, although prior to the application. Also, they were never put to commercial use and must be regarded as largely experimental and abandoned. The limited use and abandonment of the Lodge contactor, without application for a patent, it must be confessed, tends to instil a doubt as to the patentability of the plaintiff's device. It did not impress one acquainted with the art.

### Patent No. 1,996,175.

This patent has been called the "Shield Patent" during trial. Just what is the novelty claimed for it is not very obvious. The drawings disclose the identical rheostat disclosed in the Patent No. 1,920,-217. This being so, it follows that infringement is found, and that the question involved is as to the validity of the patent.

It is admitted that the compact form of the rheostat disclosed is not covered by the claims. That is the subject of another application pending in the Patent Office. It is also admitted that the invention does not consist in the combination of a switch and a rheostat. The rheostat of the patent is the combination of a jointly operated switch and rheostat, with a shield between the units. It seems to follow, this being true, that the novelty claimed must be in the shield or in the particular form of the shield.

It is admitted in the patent specifications, and was stated in the testimony of the experts of both parties, that it was well known prior to any date of invention claimed that one radio unit may pick up disturbances from another unit in close proximity to it. And it also appeared from patents and printed articles, and from the testimony of all witnesses, that such disturbances could be prevented by the interposition of an electrically conductive shield between the units. Shielding with a grounding connection was not generally used prior to 1928, because prior to that year the switch generally carried direct current of low voltage. In 1927 or 1928, alternating current in radio came into use, and with it the need for shielding. The efficacy of grounding was well known, however, prior to 1927. See Moore Patent No. 1,641,395. Also deposition of the patentee. About this time manufacturers were seeking compactness in the form of their rheostats, and to secure it the units were being brought closely together, with more disturbance being created between the units and consequent need of shielding. But although the need for it had not been so great before 1927 as after it, the function of a grounded shield was well known, and the necessity of such a shield in compact rheostats. See testimony of experts, Crossley for plaintiff and Langley for defendant. In an article, "Why Shielding" in the magazine "Radio Broadcast" of June 1927, the reasons for shielding were discussed at length, and it was pointed out that it allowed the manufacture of a receiver of compact form.

If the patentee had merely inserted a complete shield between the switch and resistance, it seems quite clear that no claim of invention could be predicated upon the insertion. His shield, however, contained an opening. Does that fact change the situation?

In our opinion it did not. The opening decreased the efficacy of the shield as such, and was made in order to allow the operation of the switch and rheostat together by the single control shaft—which operation is admittedly not the subject of the patent.

Finding that the patent discloses nothing more than mechanical skill, as has the court, it is unnecessary that the defendant's

claim of prior use and estoppel be considered at any length. The patentee, somewhat over three years before his application for the patent, placed a rheostat embodying the patented features in a radio cabinet in his own home, and used the same for several months. During its use he exhibited it to several fellow employes, and perhaps to one other person under circumstances which indicated that the disclosure was in confidence. Later the rheostat was taken to the factory of plaintiff for further experiment, which established its efficacy. It was not manufactured for sale until some months before application for the patent largely because putting it upon the market would interfere with the sale of another form of rheostat being put out by his company. Abandonment is not to be found from the testimony.

Let a decree be presented in accordance with the facts found and the conclusions of law.